BOARDMAN COMPANY and United States Fidelity and Guaranty Company, Petitioners,

v.

Ruth EDDY, and the State Industrial Court of the State of Oklahoma, Respondents.

No. 39372.

Supreme Court of Oklahoma.

July 5, 1961.

Rehearing Denied Aug. 1, 1961.

Fenton, Fenton, Smith & McCaleb, Oklahoma City, for petitioners.

O. B. Martin, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

JOHNSON, Justice.

Mrs. Ruth Eddy, claimant, mother of Joseph M. Eddy, deceased employee, obtained an award under the death benefit provisions of the Workmen's Compensation Act, 85 O.S.1951 § 1 et seq., for the maximum statutory amount of $13,500.

At the time of his death decedent was operating an arc welding torch at employer's plant in Oklahoma City. While standing or stooping with one foot upon the concrete floor and the other on a "step-way" platform some 24–30 inches above the ground level, he became suddenly precipitated, threw his hands up and knocked off a welding hood he was wearing. He began to fall backward, but then "rolled over" and struck the floor "with his face down." When observed by co-workers immediately after the occurrence, decedent's face was purple, and there was blood flowing from multiple lacerations on his forehead above the left eyebrow. Unable to raise himself from the floor, he remained lying on his hands and knees with his head hanging down. Apparently unconscious and gasping for air, he died a short time later without uttering a word.

Challenged, as unsupported by competent proof, is the trial tribunal's finding that decedent's death resulted from an accidental injury arising out of his employment. Employer urges the evidence compels the conclusion that a spontaneous internal condition, unrelated to the risk of employment, produced decedent's loss of equilibrium and constituted the sole precipitating factor of his subsequent death.

The medical evidence adduced by the employer consists of an autopsy report by Dr. E., a pathologist. This physician stated that the actual cause of death was "extremely difficult to assess" and "the only findings of significance are fatty changes within the liver which are known and reported in the (medical) literature as producing sudden death" due to dysfunction or insufficiency of that organ. The opinion of Dr. E. was contradicted by that of Dr. R., who ruled out the presence of fatty liver as a causative factor of the fatality.

The latter physician pointed out that no signs of fat embolism were uncovered in the course of Dr. E.'s post-mortem examination. The tenor of Dr. R.'s testimony indicates that decedent suffered from a thrombo-embolic occlusion of the superior vena cava, which condition was probably attributable to trauma sustained in the fall. This fatal pathology, Dr. R. explained, can develop immediately or within a short period after the injury. The variations in time element are due to the fact that clotting occurs more rapidly in some individuals than in others. While Dr. R. related that the occlusion of vena cava may also arise from infection or post-operative complications, these causes were excluded on the basis of decedent's medical history which showed no pre-existing surgery or ailments. The record discloses from a report of employer's plant physician, dated only a week before the occurrence in question, that decedent had been in sound physical health.

█ The testimony of Dr. R. is challenged as insufficient and based on an inaccurate history. Employer relies on Acme Flour Mills v. Bray, 185 Okl. 516, 94 P.2d 828. In the cited case there was a fatal variance between the medical history assumed by the physician and that disclosed by the proof. In the present cause it is clear that Dr. R.'s opinion was based largely, if not entirely, upon the gross and microscopic post-mortem examination performed by Dr. E. and upon decedent's medical history, both of which stand undisputed. The record does not disclose any material conflict between the facts of the injury as assumed by Dr. R. and those adduced by the evidence. Moreover, Dr. R.'s familiarity with the circumstances of decedent's fall appears far more comprehensive that that of Dr. E. whose conclusion rests solely on the results of his autopsy. See in this connection, United Brick & Tile Company v. Roy, Okl., 356 P.2d 107; Ideal Cement Co. v. Buckler, Okl., 353 P.2d 828.

█ Neither Dr. R. nor Dr. E. gave their opinions in categorical terms, but the general tenor of their testimony is sufficiently clear to render the evidence competent. See Fullhart Maytag Company v. Stapleton, Okl., 356 P.2d 350, and the cases cited therein. Whether decedent's death resulted from an accidental injury arising out of employment or from one induced by a spontaneous internal condition which alone precipitated his idiopathic fall and subsequent fatality, formed the principal issue in the proceeding. No single outstanding physical factor was disclosed or ascertained which necessarily precluded either conclusion. Although the actual cause of death cannot under the circumstances be entirely free from some speculation or uncertainty, the question was essentially one of fact. Oklahoma Ry. Co. v. Voss et al., 187 Okl. 622, 105 P.2d 218; Central Surety & Insurance Company v. Gore, Okl., 285 P.2d 1044; Baash-Ross Tool Co. v. State Industrial Commission, Okl., 289 P.2d 659; Tulsa Frozen Foods Co. v. Pendergraft, Okl., 317 P.2d 1115; Anderson-Prichard Oil Company v. Floyd, Okl., 340 P.2d 943. See also New York Life Insurance Co. v. Riggins, 178 Okl. 36, 61 P.2d 543. Both parties elicited competent evidence in support of their divergent theories of causation. The trial tribunal resolved the disputed issue adversely to the employer. In such instance it is neither the duty nor the province of this court to interfere with the factual determination so made. 85 O.S.1951 § 26; In re Greer, Okl., 356 P.2d 356.

Employer next challenges the finding of the trial tribunal that claimant was a dependent of her deceased son.

The eldest of three children, the deceased was eighteen years of age. He was single and lived with his parents. Engaged in gainful employment ever since he was in high school, he had regularly contributed all of his earnings to the mother who used the money "to pay bills and buy groceries." Upon his graduation, the mother testified "he wanted to go to night school, but he had to work to help us." A good conscientious and industrious worker, he was also a devoted son. When the mother

needed surgery, he gave up a car which he had helped buy in order to assist with her medical expenses. Although both parents were gainfully employed, the boy's assistance appeared necessary since the father, who is afflicted with a chronic ailment, was not always able to work full time.

A claimant who as a "dependent" seeks to recover death benefits under the Workmen's Compensation Act is not required to establish the status of a present total and absolute reliance upon the deceased workman for the necessities of life. The quantum of evidence necessary to establish a pecuniary loss to a parent for the death of a minor unmarried child under the Wrongful Death Statute, 12 O.S.1951 §§ 1053, 1054, is deemed equally sufficient to support the right of a parent to recover as a dependent heir under the death benefit provisions of the Workmen's Compensation Act. Partial dependence upon the deceased workman for support will authorize recovery under the Act where there is evidence of past services or contributions by the decedent, and it appears that such contributions would have probably continued except for the intervening death. Cimarron Tel. Co. et al. v. Nance et al., 208 Okl. 622, 255 P.2d 931; Oklahoma State Highway Department v. Nash, Okl., 297 P.2d 412; Dierks Forests, Inc. v. Parnell, Okl., 331 P.2d 392; Stubblefield v. Sebastian, Okl., 340 P.2d 265; Robberson Steel Company v. State Industrial Court, Okl., 354 P.2d 211.

The evidence in the case at bar amply shows that decedent, a dutiful and devoted son, had regularly contributed his earnings to the mother and would have probably continued to benefit her in the future. The record is sufficient to sustain the finding of dependency. Robberson Steel Company v. State Industrial Court, supra.

The present proceeding was instituted by the mother as sole claimant. The father, who did not assert the status of dependency, was not joined as a party, although he was named in the claim and testified at the hearing. Under the rule announced in E. G. Nicholas Const. Co. v. State Industrial Commission, Okl., 262 P.2d 893, 895, the proceeding should have been prosecuted in the name of both parents as "the next of kin," even though only the one who established a pecuniary loss (or dependency) was entitled to recover. Neither before the trial judge nor on appeal to the State Industrial Court en banc did the employer call attention to the want of necessary parties claimant. Both parents appeared before the trial judge and had an opportunity to assert their claims. Under this state of the record, the error was at most harmless. It did not affect employer's rights, nor did it inure to its prejudice. E. G. Nicholas Const. Co. v. State Industrial Commission, supra.

The award is not otherwise challenged. We find it free from errors of law and supported by competent evidence. Award sustained.